UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| RICARDO WILSON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ROBERT (R. KELLY) KELLY, RCA and SONY MUSIC ENTERTAINMENT, INC.<br><br>　　　　Defendants. | CIVIL ACTION NO.<br><br>1:18-CV-05014-JPB |

## ORDER

This matter came before the Court on Sony Music Entertainment's Motion to Dismiss [Doc. 36]. This Court finds as follows:

## BACKGROUND

In 2008, Plaintiff Ricardo Wilson ("Wilson") was allegedly incarcerated in a prison in Manchester, Kentucky. [Doc. 28, p. 3]. At this time, Defendant Robert Kelly's ("Kelly") manager, while also incarcerated in the same prison, allegedly approached Wilson regarding an opportunity to compose songs for Kelly. Id. After Wilson agreed, he allegedly composed a song entitled Love Letter ("the Song") and filed for "valid and registered copyrights." Id. at 3, 6–7. In 2009, Wilson allegedly provided Kelly with the sheet lyrics for the Song and spoke with one of Kelly's business associates over the phone from the prison. Id. at 6. During the phone call, Wilson allegedly modulated his voice to provide the cadence of the

Song. Id. at 7. Kelly's business associate indicated Kelly was very satisfied with Wilson's work and assured Wilson that he would be in contact. Id. After Wilson was transferred to a prison in Pollock, Louisiana, he heard the Song broadcasted on the radio. Id. at 3. Wilson alleges the Song on the radio had the same title, the same melody and some of the same lyrics. Id. at 3–4, 7. At some unspecified time, it became apparent to Wilson that Kelly had given Defendants RCA and Sony Music Entertainment ("Sony") permission to produce, promote and distribute the Song without Wilson's permission and without compensating Wilson or giving him credit for the Song. Id. at 2, 5. Additionally, Kelly, RCA and Sony titled an entire album after the Song and eventually released a second album entitled Write Me Back that was birthed from the Song. Id. at 5. After Wilson was released from prison, Kelly's manager allegedly called Wilson several times to reassure him that "he would be compensated for the [S]ong, album title, tour, digital downloads, etc. and everything else derived from the original lyrics and [S]ong." Id. at 8. After numerous failed attempts to collect the promised compensation, Wilson initiated this lawsuit against Kelly, RCA and Sony on October 31, 2018. [Doc. 1]. Wilson, appearing pro se, filed a Second Amended Complaint on April 23, 2019, alleging copyright infringement in violation of 17 U.S.C. § 102, to which Sony responded by filing this Motion to Dismiss. [Doc. 28].

## ANALYSIS

### A. Preliminary Matter

As an initial matter, the Court must address the entities incorrectly named as parties in this case.

Sony begins its Motion to Dismiss by briefly alleging that it "is incorrectly identified as 'Sony Music Entertainment, Inc.'" in the Second Amended Complaint. [Doc. 36, p. 1 n.1]. Additionally, Sony argues that RCA Records is "incorrectly named in the [Second] Amended Complaint as 'RCA'" and "is not a proper defendant because RCA Records is a division of Sony, and not a standalone corporate entity." Id. Wilson does not dispute that "Sony Music Entertainment" and "RCA Records" are the proper names for the parties that Wilson originally identified as "Sony Music Entertainment, Inc." and "RCA." [Doc. 24, p. 2]. Wilson maintains, however, that RCA Records is a subsidiary company of Sony Music Entertainment. Id. Wilson has not provided any evidence suggesting that RCA Records is a separate legal entity from Sony Music Entertainment rather than a division of the company, and nothing indicates that Sony's statements regarding its legal structure are untrustworthy.

Under Federal Rule of Civil Procedure 21, "the court may at any time, on just terms, add or drop a party." The Eleventh Circuit has stated that the standard for adding new parties under Rule 21 is the same as the standard for amending a

3

complaint under Rule 15(a).  Loggerhead Turtle v. Cty. Council of Volusia Cty., 148 F.3d 1231, 1255 (11th Cir. 1998).  Accordingly, a trial court should not deny leave to add or drop a party without a justifying reason, such as undue delay, bad faith, prejudice to the opposing party or futility.  Foman v. Davis, 371 U.S. 178, 182 (1962).

Although Wilson names Sony Music Entertainment, Inc. and RCA in the case-style, in the body of the Second Amended Complaint, Wilson sufficiently identifies Sony Music Entertainment and RCA Records as the company and label responsible for producing, promoting and distributing the Song.  [Doc. 28, p. 5]. Furthermore, when Wilson executed service, he properly served the correct legal entity responsible for both parties—Sony Music Entertainment—which responded by filing this Motion.  [Docs. 16, 17].  Wilson's clerical error in naming Sony Music Entertainment, Inc. and his belief that RCA was a subsidiary company that needed to be named separately do not appear to be motivated by bad faith, and a corrective amendment would not be futile.  Additionally, an amendment would not cause undue prejudice to Sony because the correct legal entity was properly served and responded to the Second Amended Complaint.  Therefore, this Court finds Wilson should freely be given leave to amend his Second Amended Complaint by substituting Sony Music Entertainment, Inc. with Sony Music Entertainment as the proper legal defendant and dropping RCA as a party.

## B. Motion to Dismiss

At the outset, this Court recognizes that Wilson is pro se, and therefore the Court has an obligation to construe his pleadings liberally. Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998). This liberal construction does not allow the Court to act as de facto counsel or rewrite otherwise deficient pleadings for a pro se litigant. GJR Invs., Inc. v. Cty. of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998). Importantly, however, Federal Rule of Civil Procedure 15(a) "severely restrict[s]" a district court's ability to dismiss complaints without first providing an opportunity to amend. Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001); see also Rance v. Winn, 287 F. App'x 840, 841 (11th Cir. 2008).

"At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1274 n.1 (11th Cir. 1999). In determining whether this action should be dismissed for failure to state a claim, Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although detailed factual allegations are not necessarily required, the pleading must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Importantly, "a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (citation omitted).  If a complaint fails to state a claim and "a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice."  Woldeab v. DeKalb Cty. Bd. of Educ., 885 F.3d 1289, 1291 (11th Cir. 2018) (citation and punctuation omitted).

When analyzing a motion to dismiss, a district court may consider documents attached to the complaint as part of the complaint.  A district court may also consider "a document attached to a motion to dismiss . . . if the attached document is (1) central to the plaintiff's claim and (2) undisputed.  In this context, 'undisputed' means that the authenticity of the document is not challenged." Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005).  Importantly, "a document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, [a district court] may consider such a document provided it meets the centrality requirement."  Id.

In the Second Amended Complaint, Wilson raises a claim for copyright infringement alleging that Sony financed and distributed the Song in 2010 and has since "sold millions of digital downloads and copies." [Doc. 28, pp. 3, 5].  To establish a claim for copyright infringement, a plaintiff must show:  "(1) ownership

of a valid copyright, and (2) copying of constituent elements of the work that are original."  Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991).  Sony argues that Wilson fails to state a claim for copyright infringement for the following reasons:  (1) Wilson has not shown that he owns a valid copyright in the Song's title, cadence or concept; (2) Wilson has not shown that Sony copied constituent elements of the Song; and (3) Wilson's claims are time-barred.  Each argument is addressed separately below.

> i. <u>Copyright Infringement Element One:  Whether Wilson has shown ownership of a valid copyright</u>

Under the Copyright Act of 1976,

> [c]opyright protection subsists, in accordance with [the Act], in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device.  Works of authorship include . . . musical works, including any accompanying words."

17 U.S.C. § 102(a).  However, "in no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."  17 U.S.C. § 102(b).  Importantly, although "[c]opyright inheres in authorship and exists whether or not it is ever registered[,] [t]he Copyright Act makes clear that registration is a separate issue from the existence of the copyright itself."  Arthur Rutenberg Homes, Inc. v.

Drew Homes, Inc., 29 F.3d 1529, 1531 (11th Cir. 1994).  Section 411(a) of the Act states that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with [the Act]."  17 U.S.C. § 411(a).

To establish the first element of a copyright infringement claim—ownership of a valid copyright—"a plaintiff must prove that the work . . . is original and that the plaintiff complied with applicable statutory formalities."  Latimer v. Roaring Toyz, Inc., 601 F.3d 1224, 1233 (11th Cir. 2010).  In judicial proceedings, "the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate."  17 U.S.C. § 410(c).

Here, Wilson attached to the original Complaint a copy of the certificate of registration for his copyright in the lyrics of the Song.[1]  [Doc. 3, p. 5].  Sony does not appear to dispute the validity of this copyright.  Sony, instead, argues Wilson cannot show that he owns a valid copyright in the Song's title, concept or cadence.  [Doc. 20, pp. 9–13].  First, Sony contends that a concept is not copyrightable under the Act, so Wilson cannot prove ownership of a valid copyright in the concept of the Song.  Id. at 9.  Second, Sony argues that Wilson fails to show a valid

---

[1] It appears Wilson intended to attach the same copyright certificate to the Second Amended Complaint, and Sony also attached the certificate to its Motion for the Court's convenience.  [Doc. 28, p. 10; Doc. 20, p. 6 n.6].

protectable copyright interest in the Song's title and cadence because: (1) only original song titles are copyrightable and Wilson's title, Love Letter, is not original; and (2) Wilson fails to allege that he fixed the cadence in a tangible medium of expression. Id. at 10–12. Lastly, Sony argues that, notwithstanding Wilson's failure to show a valid protectable copyright interest in the Song's title and cadence, Wilson's certificate of registration illustrates a copyright in the lyrics of the Song only; therefore, Wilson's certificate is not prima facie evidence of the validity of a copyright in the Song's title or cadence or of the copyright registration required under 17 U.S.C. § 411(a) to bring suit for infringement of the Song's title and cadence. Id. at 13–14.

      The Court will address Sony's arguments in turn. First, copyright protection is not extended to concepts; therefore, it is not possible to prove ownership of a valid copyright in the concept of a song. 17 U.S.C. § 102(b). However, this Court disagrees with Sony's characterization of Wilson's claims in the Second Amended Complaint. Although Wilson briefly alleges that he "created the [S]ong's title, concept, cadence, and some of the words," he does not appear to bring an independent copyright infringement claim specifically for the concept of the Song. [Doc. 28, p. 4]. However, should Wilson attempt to bring a claim for copyright infringement of the concept of the Song, Sony can renew its motion to dismiss such claim at that time.

Second, although it has been found that song titles generally are not copyrightable because "common phrases are not eligible for copyright protection[,] . . . an original arrangement of unprotectable material can be protected by the copyright laws." Edwards v. Raymond, 22 F. Supp. 3d 293, 299 (S.D.N.Y. 2014) (citing Feist Publ'ns, 499 U.S. at 348). In Wilson's responsive brief, he argues that Sony's recording of the Song in its entirety uses Wilson's "exact format." [Doc. 24, p. 13]. Wilson appears to be arguing that Sony copied Wilson's original arrangement of the Song, which is best analyzed under element two—whether Wilson has shown copying of constituent elements of the Song. Although Wilson does not clearly articulate this argument in the Second Amended Complaint, to the extent that Wilson is alleging that Sony copied the manner in which Wilson uses the phrase Love Letter, it appears that Wilson may have the requisite information necessary to establish a claim. Additionally, although Wilson fails to allege that he fixed the Song's cadence in a fixed medium of expression in the Second Amended Complaint, in Wilson's responsive brief, he does allege that Kelly's business associate "recorded [Wilson's] voice modulation [of the Song] over the phone." Id. This also indicates that Wilson may have the requisite information necessary to show ownership of a valid copyright for purposes of establishing an infringement claim.

Lastly, it is true that Wilson's certificate of registration illustrates a copyright in the Song lyrics only. However, the Second Amended Complaint includes the following allegations: (1) Wilson agreed to write songs for Kelly "but not before filing for the valid and registered copyrights"; and (2) Wilson informed Kelly's manager that he was "in the process of securing the registered copyright, valid copyright, and 'Poor Man's' copyright for extra security if needed." [Doc. 28, pp. 3–7]. Throughout the Second Amended Complaint, Wilson also references and attaches a list naming the following exhibits: (1) "Exhibit A – Copyright Certificate"; (2) "Exhibit B – Valid Copyrights"; (3) "Exhibit C – Recording Contracts"; (4) "Exhibit D – Book Manuscript/The Songwriter's Bible"; (5) "Exhibit F – Documentary Film"; (6) "Exhibit G – Photos"; (7) "Exhibit H – Testimonial Witnesses." Id. at 3, 6, 8–10. Although Wilson failed to file these exhibits as attachments to his Second Amended Complaint, taken together, the information above indicates he might have the requisite information to establish the validity of a copyright in the Song's cadence and to sufficiently show the registration required to bring a copyright infringement suit.

For these reasons, this Court finds a more carefully drafted complaint *might* state a claim in this matter. Therefore, the Court will provide Wilson an opportunity to amend his Second Amended Complaint to add this information, if possible.

> ii. <u>Copyright Infringement Element Two: Whether Wilson has shown copying of constituent elements of the work that are original</u>

To establish the second element—copying of constituent elements—"the plaintiff [must] show that (1) the defendant had access to the work and (2) that the defendant's work is substantially similar to the plaintiff's." <u>Original Appalachian Artworks, Inc. v. Toy Loft, Inc.</u>, 684 F.2d 821, 829 (11th Cir. 1982). "Substantial similarity exists where an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." <u>Id.</u> (citation and punctuation omitted).

Here, Sony argues that Wilson cannot show that Sony copied any constituent elements of the work that are original because Wilson, "on the face of his [Second] Amended Complaint, implicitly acknowledges that Sony was a proper licensee who had been granted a license from R. Kelly and/or his publishing company to distribute [the Song]." [Doc. 20, p. 16]. This Court disagrees with Sony's characterization of Wilson's Second Amended Complaint. On the contrary, Wilson appears to argue the exact opposite. In the Second Amended Complaint, Wilson alleges the following: (1) "Kelly recorded and released 'Love Letter' . . . without permission"; (2) Kelly put "the record on an album without having purchased the [S]ong through the proper channels"; and (3) Kelly's manager "consistently informed Wilson that he would be compensated for the [S]ong,

12

album title, tour, digital downloads, etc. and everything else derived from the original lyrics and [S]ong." [Doc. 28, pp. 3, 8]. Additionally, in Wilson's responsive brief, Wilson clearly argues that he "owns the valid (PA) Performing Arts registered copyright" while Sony "illegally owns the (SR) Sound Recording license registration." [Doc. 24, p. 5]. Nowhere in the Second Amended Complaint does Wilson suggest Kelly properly licensed the Song to Sony. Furthermore, Sony's argument relies on the premise that "one joint author may properly license the copyright in a joint work to a third party." Cambridge Univ. Press v. Becker, 863 F. Supp. 2d 1190, 1257 (N.D. Ga. 2012). This legal concept, however, applies to "[j]oint authors co-owning copyright in a work," and Kelly is clearly not listed on Wilson's copyright certificate as an author. Id. (citation and punctuation omitted).

Sony also briefly argues that because Wilson can only show that he has a copyright in the Song lyrics and admits that "Kelly 'changed a lot of the words' . . . the Song is, admittedly, not substantially similar." [Doc. 20, p. 15 n.13]. Because Wilson failed to attach the lyrics of the Song as he wrote them and the lyrics of the Song as recorded and published, this Court cannot make any determination regarding the similarity of the lyrics in both songs. As noted above, however, it appears that Wilson might have intended to include this information as attachments to the Second Amended Complaint. Thus, it appears that Wilson may have the

13

requisite information necessary to show copying of constituent elements of the work that are original for purposes of establishing an infringement claim.

For these reasons, this Court finds a more carefully drafted complaint *might* state a claim in this matter. Therefore, the Court will provide Wilson an opportunity to amend his Second Amended Complaint to add this information, if possible.

    iii.    <u>Copyright Infringement Claims Time-barred: Whether Wilson's claims are time-barred</u>

Civil actions for copyright infringement must be "commenced within three years after the claim accrued." 17 U.S.C. § 507. "The limitations period may be triggered when a plaintiff knows or, in the exercise of reasonable diligence, should have known about an infringement." <u>Calhoun v. Lillenas Publ'g</u>, 298 F.3d 1228, 1236 (11th Cir. 2002). Additionally, "[u]nder the separate-accrual rule, each time an infringing work is reproduced or distributed the infringer commits a new wrong and the 'statute of limitations runs separately from each violation.'" <u>Black Box Royalties, Inc. v. Universal Music Publ'g, Inc.</u>, No. 1:15-CV-04013-ELR, 2017 WL 3508727, at *6 (N.D. Ga. Feb. 21, 2017) (quoting <u>Petrella v. Metro–Goldwyn–Mayer, Inc.</u>, 572 U.S. 663, 671 (2014)). A plaintiff, however, "cannot avoid a statute of limitations defense by portraying an action as one for infringement when copyright ownership rights are the true matter at issue." <u>Id.</u> (citation and punctuation omitted). Thus, "[w]here the gravamen of a copyright infringement

suit is ownership, and a freestanding ownership claim would be time-barred, any infringement claims are also barred." Lott-Johnson v. Estate of Goreau, No. 1:14-CV-03104-WSD, 2015 WL 4389979, at *3 (N.D. Ga. July 15, 2015) (citation and punctuation omitted) ("In a typical copyright infringement case, ownership is not at issue and the dispute is based on whether copying infringed on a plaintiff's rights or whether the materials taken were original.").

Here, Sony argues the separate-accrual rule does not apply to Wilson's claims because "an actual controversy may exist between [Wilson] and Kelly concerning copyright ownership and whether [Wilson] is a joint author or co-owner of the [Song]"; therefore, the gravamen of Wilson's copyright infringement suit is ownership. [Doc. 20, p. 19]. This Court disagrees. Wilson's copyright certificate clearly lists Wilson as the sole author and copyright claimant of the Song lyrics. At present, there is no evidence suggesting Kelly had any ownership interest in the copyrighted lyrics. Therefore, copyright ownership is not the gravamen of the suit, and the separate-accrual rule applies to Wilson's claims.

However, after applying the separate-accrual rule, it is possible that Wilson is indeed barred from bringing certain infringement claims. In the Second Amended Complaint, Wilson alleges the album containing the Song was financed and distributed in 2010 and has since "sold millions of digital downloads and copies." [Doc. 28, pp. 3, 5]. Wilson asserts that he "was transferred to Pollock,

15

Louisiana's federal prison before he heard the song 'Love Letter' being broadcasted nationally on the radio" and that upon being released from prison, Kelly's manager contacted Wilson multiple times to reassure him that he would be compensated for the Song. Id. at 3, 8. Wilson, however, does not specifically state the date he heard the Song on the radio or the dates he spoke with Kelly's manager upon his release from prison. Id. at 3. This information is necessary to determine when Wilson knew or should have known about the initial copyright infringement, triggering the limitations period. In Wilson's responsive brief, he does specify various dates that he allegedly contacted Sony representatives regarding the Song. [Doc. 24, pp. 3, 24]. Thus, it appears that Wilson may have the requisite information necessary to establish copyright infringement claims for several alleged infringing acts that are not time-barred.

For these reasons, this Court finds a more carefully drafted complaint *might* clarify whether any claims for infringement are time-barred. Therefore, the Court will provide Wilson an opportunity to amend his Second Amended Complaint to add this information, if possible.

## CONCLUSION

For the foregoing reasons, this Court **DENIES** Sony Music Entertainment's Motion to Dismiss [Doc. 36] and sua sponte **GRANTS** Wilson leave to file a Third Amended Complaint within twenty-one days of this Order. The Third Amended

Complaint shall: (1) name the correct legal defendants (Robert (R. Kelly) Kelly and Sony Music Entertainment); and (2) allege facts necessary to state a claim against Sony. Failure to file a Third Amended Complaint in accordance with this Order will result in dismissal.

    **SO ORDERED** this 5th day of March, 2020.

_____
**J. P. BOULEE**
United States District Judge