IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA,

ATLANTA DIVISION



FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

APR 1 3 2020

JAMES N. HATTEN, Clerk

By: _____ Deputy Clerk

RICARDO WILSON,

    PLAINTIFF,


V.                                      CIVIL ACTION NO.
                                          1:18-CV-5014-AT


ROBERT "R. Kelly" KELLY, RCA,
SONY MUSIC ENTERTAINMENT INC,

    DEFENDANTS,


**AMENDED VIOLATION OF THE UNITED STATES COPYRIGHT LAWS,
SUPPORTING MEMORANDUM OF LAW AND REQUEST FOR HEARING**

The plaintiff, Ricardo Wilson, respectfully requests this

honorable court to grant his copyright claims pursuant to title 17

U.S.C. 102 (a), Chapter 5, Copyright Infringement and Remedies,

request a hearing on the suit, and states:


**JURISDICTION**

Title U.S.C. 102 (a) holds that the court shall grant a

judgement in a suit if the court determines that the judgement was

rendered without jurisdiction, or that there has been such a denial

or infringement of the petitioner's constitutional rights as to render the judgement vulnerable to collateral attack.

## VENUE

The plaintiff resides in the Northern District of Georgia and is living at 478 S. Atlanta St., Roswell, Georgia 30075. Therefore venue is appropriate in this district.

## NATURE OF OFFENSE

The Defendants are music entertainment executives and an artist. The plaintiff is a freelance songwriter. An R&B song was written by the plaintiff Ricardo Wilson. The original song was titled "LOVE LETTER." The defendant, Robert Kelly was signed in a Recording contract with RCA records. Kelly was given permission to record the song but did not give Wilson any writing credits or compensation for his contributions to the song. The song was recorded and sold in the music entertainment market. The album was also nominated for an American Grammy Award.

Chapter 5 Copyright Infringement and Remedies states the Copyright protection under section **[17 U.S.C.§ 102 (a)]**. Copyright protection subsist, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, or otherwise communicated, either directly, or with the aid of a machine or device. Work of authorship include (1) literary works; and (2) musical works, including any accompanying music. If a publisher gives a song to an artist for a joint venture, it is

copyright infringement if the artist accepts the song, change the words and publish the song.

## ARGUMENT

Wilson alleged that Robert "R. Kelly" Kelly recorded and released "LOVE LETTER" a song he wrote and to which he holds the copyright, without permission. The complaint is copyright infringement. The main issue is whether or not Kelly was wrong for putting the record on an album without having purchased the song through the proper channels. Robert Kelly is a multi-platinum, Grammy Award winning recording artist. Ricardo Wilson is an r&b/pop songwriter, music producer, and rap artist. He claims that he composed "LOVE LETTER", an R&B song in 2008. The song "LOVE LETTER" has sold millions of digital downloads and copies and is being performed in concerts by Kelly. The recordings were put out by Jive Records, a unit of Sony Music Entertainment. This lawsuit concerns those recordings.

The ownership history of the "LOVE LETTER" copyright is plain to see. Wilson and R. Kelly's manager, Renaldo Parker was serving prison time in Manchester, Kentucky's federal prison for unrelated charges. Parker and Wilson were neighbors in the same prison unit. Parker was informed about Wilson's writing potential and approached Wilson about sending songs to R. Kelly. Wilson agreed, but not before filing for the valid and registered copyrights. **(Exhibit's (A) and (B)**. Wilson was transferred to Pollock, Louisiana's federal prison before he heard the song "LOVE LETTER" being broadcasted nationally on the radio. **Desny v. Wilder, 46 (A) 2d 715, 299 p. 2d 257.** The Supreme

(3)

Court recognized and implied contractual right to compensation when a writer submits material to a producer with the understanding that the writer will be paid if the producer uses the material. **Slaughter v. Raymond 9th district 2011.** Usher Raymond created the songs concept and title, Dupri and Cox co-produced it, and all three contributed to it's music and lyrics. Wilson created the song's title, concept, cadence, and some of the words. Kelly changed a lot of the words and kept the cadence and title, which is also the title of the album (LOVE LETTER). As Judge Learned hand wrote, "no plagiarist can excuse the wrong by showing how much of his work he did not pirate." **Sheldon v. Metro-Goldwyn Pictures Corp., 81 F.2d 49, 56, (2nd cir.)** "It is enough that substantial parts were lifted. **Erickson v. Trinity Theatre Inc. F.3d 1061, 1068.** Indeed, the fact that defendants changed the names of the streets while retaining the same graphic depiction weakens their case: **Steinberg v. Columbia Pictures Industries, Inc., 663 F. Supp. 706(1987).** Even if a person's contribution is minor, he enjoys all benefits of joint authorship.

## DISTRIBUTION LIABILITY

Clive Calder and Ralph Simon are the founders of Zomba Group and it's subsidiary company Jive Records. Jive Records was formed in 1981. Calder sold Zomba in 2002 for $2.74 billion to German media group Bertelsmann. Calder left the music business in 2003.

RCA is an American record label owned by Sony Music Entertainment (SME), a subsidiary of Sony Corporation. In 2004, Sony Music and Bertelsmann, established a 50-50 joint venture known as

Sony BMG Music Entertainment, which transferred the businesses of
Sony Music and Bertelsmann Music Group (BMG) into one entity.
However, in 2008, Sony acquired Bertelsmann's stake, and the company
reverted to the SME name shortly after; the buyout allowed Sony to
acquire all of BMG's record labels, and led to the dissolution of
BMG. RCA and Sony are involved with producing, promoting, and
distributing music including the album LOVE LETTER.

17 U.S. Code § 504 (b) Remedies for infringement: Damages and profits

According to the RIAA (Recording Industry Association of
America) in 2010 Jive Records distributed and financed the album LOVE
LETTER by R. Kelly, under the direction of the head of RCA/Jive Label
group at the time, Barry Weiss.

2011 the Love Letter album was certified gold selling 500,000
copies. October 7th, 2011 RCA closed Jive, Arista, and the J label
imprints subsidiaries, a move by new label executives to strengthen
the identity of the RCA brand. Artists who signed contracts with
these three imprints were shifted to RCA. R. Kelly was one of the
artists.

In 2011, RCA records bought Jive Records and all of their back
log. Sony music remains the parent company to RCA in 2019.

In 2011, R. Kelly recorded a second album birthed from the LOVE
LETTER album entitled WRITE ME BACK. That album was financed and
distributed by RCA and Sony Music Entertainment as well.
Plaintiff is seeking $5 million in damages and profit.

**Williams v. Gaye**, No. 15-56880 (9th cir. 2018). The District court's award of actual damages, infringer's profits, and it's running royalty were proper.

The cadence came into fruition while Plaintiff was incarcerated in Manchester, Kentucky's federal prison. Wilson wrote music to mentally escape the anguish of confinement. He signed 3 minor recording contracts while serving his sentence **(Exhibit C)**.

Artistically, the Plaintiff would produce a harmony from surrounding sounds by humming to him self a rearranged melody, which would give him the rhythm to write the lyrics and compositions. Copyright does not prevent subsequent users from copying from a prior author's work those constituent elements that are not original--for example--facts, or materials in the public domain--as long as such use does not unfairly appropriate the Author's original contributions. [471 U.S., at 547-548] **Feist Publications, Inc., 499 U.S. at 361, 111 S. Ct. at 1296, 113 L. Ed. 2d 358.**

After Wilson and R. Kelly's collaboration on the LOVE LETTER song. Wilson goes on to compose over 300 more R&B and pop songs with plans to present them to R. Kelly upon his release. **[THE SONGWRITER'S BIBLE-SONGBOOK 130] (EXHIBIT D)**.

In 2009, Renaldo Parker directed Wilson to the institutional pay phone to join in on a call engaged with R. Kelly's business associate named Tom Tom. Renaldo informed Wilson that Tom Tom was currently visiting a recording studio with R. Kelly where he recently gave him the package with the Plaintiff's sheet lyrics inside. Once on the

call, Tom Tom confirms with Wilson that R. Kelly has the written material and is very satisfied with the works. Tom Tom asked Wilson, "Which one do you like the most?" Wilson replied. "LOVE LETTER." Tom Tom asked Wilson to sing the song. Wilson replied, "I cannot sing, I repeat, I cannot sing. I wish I could. I only write. But here's the cadence." At that instant, the Plaintiff modulated his voice over the pay phone. Tom Tom approved then assured Wilson that he would be in contact with him and Parker. Shortly afterwards they ended the call. The greater the showing of access the lesser the showing of substantial similarity is required. **Swirsky 376 F.3d at 844. Three Boys Music, 212 F.3d at 485.**

While leaving the institutional pay phone area, Parker inquired about the copyrights. Wilson informed Parker that he's in the process of securing the registered copyright, valid copyright, and "Poor Man's" copyright for extra security if needed. Parker agreed, before making a public announcement to several inmates in the prison dormitory that Wilson has just written a song for R. Kelly. The district court ruled that the 1909 Act protected only the deposit copy of "Got To Give It Up," and excluded the sound recording from consideration. **Williams v. Gaye. No 15-56880 (9th cir. 2018)** Wilson contest that the cadence he translated over the phone to Tom Tom is the same melody that R. Kelly chants in the opening of the recorded song LOVE LETTER, which was released under Jive/RCA in 2010, and is continually owned by Sony Music Entertainment. Renaldo Parker confirms R. Kelly's access to the sheet lyrics and song LOVE LETTER

(7)

during a conversation with the Plaintiff in the film documentary **Ten In The Feds**, produced by Wilson. **(Exhibit E)**

Once the Plaintiff was released from prison he received several calls from Parker. Parker consistently informed Wilson that he would be compensated for the song, album title, tour, digital downloads, etc. and everything else derived from the original lyrics and song LOVE LETTER.  In due course, Parker would refuse to return any of the Plaintiff's phone calls, which moved Wilson to seek legal guidance from Georgia Lawyer of the Arts.

Attorney Christopher Troutman was assigned to the case, but was unable to proceed into the litigation process. Troutman was able to contact R. Kelly's business manager Derrel McDavid. Troutman informed Wilson that he knew who Renaldo Parker was and that Derrel McDavid stated over the phone, "Why did he secure counsel, R. Kelly is going to pay him?" Troutman responded, "My client has been calling and leaving messages for almost a year and no one will return his call." **(Exhibit F)**

In the Inverse Ratio Rule it states: The greater the showing of access, the lesser showing of similarity is required. Williams and Thicke readily admitted at trial that they had a high degree of access to "Got To Give It Up." **Williams v. Gaye, No. 15-56880 (9th cir. 2018)**

At one point of the defendant's career, Renaldo Parker acted as R. Kelly's manager. He acquired many industry connections. And once

Wilson entered the Atlanta Half Way house, Renaldo made a few phone calls to connect the Plaintiff with industry executive John Monopoly (an entertainment agent/manager for artists) to act as Wilson's manager, once the split sheets were produced.

Wilson and Monopoly spoke on the phone several times. The connection was for Wilson to obtain a publishing deal at a major record label, with Monopoly as his representation.

The Plaintiff regress on the shadiness of the record industry and how the "Rumor In The Music Industry," is that most record companies would rather steal a persons music or sample it, rather then ask for permission because when you ask for permission up front the original author or producer will set the price high. This allows most companies to steal material because it's cheaper to settle out of court." **(Ten In The Feds Documentary.)** "Exploit now, pay later if at all." **Chesney "Chet" Baker Estate v. Sony BMG Music (Canada) 17 U.S.C. § 504 (b).** It involves the record labels to create, press, distribute and sell the records, but do not obtain the necessary copyright licenses. The main point of contention was whether Rick Ross had made it clear that using the word "mastermind" naturally included musicians. Court reversed the ruling. **Caiz v. Roberts, II, No. 17-55051 (9th Cir. 2018).**

Wilson continues that Multi-platinum songs are composed by ghost writers and songwriters who collaborate with multi-platinum singers and artist more than often. Even if the writer's contribution was minor he enjoys all benefits from joint authorship. The Gaye's don't

contend that every aspect of "Blurred Lines" infringes "Got To Give It Up." Rather, they indentify only a few features that are present in both works. **Williams v. Gaye, No. 15-56880 (9th cir. 2018)**

Mr. Robert Kelly is the self-proclaimed "Pied Piper" of R&B and has a reputation for writing music about the things that he actually does. The song LOVE LETTER is about an individual in prison actually writing a letter to a personal pen pal while exercising and reciprocating basic writing structure, and skill that requires fundamental reading composition. It's a quality that many of the inmates in the Bureau Of Prison's population posses.

**REQUEST FOR A HEARING**
**(IF NEEDED)**

The petitioner respectfully requests that this Honorable Court grant a hearing on the issues presented in this motion.

**CONCLUSION**

In light of the foregoing facts and arguments, petitioner respectfully requests that this Honorable Court grant his copyright claims.

Respectfully Submitted,

Ricardo Wilson
PRO SE

(10)

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

APR 0 6 2020

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

-------------------------------------------------------- X

RICARDO WILSON,

        Plaintiff,

        v.

ROBERT SYLVESTER KELLY, A.K.A. ROBERT
(R.KELLY) KELLY, P/K/A R-KELLY,
SONY MUSIC ENTERTAINMENT, SONY MUSIC
PUBLISHING LTD,

        Defendants,

No. 1:18-cv-05014

**THIRD
AMENDED
COMPLAINT**

-------------------------------------------------------- X

## THIRD AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT, CONSPIRACY TO COMMIT COPYRIGHT INFRINGEMENT, AND CRIMINAL AND CIVIL RACKETEERING (R.I.C.O.) ACT

COMES NOW, Plaintiff Ricardo Wilson and files this Third Amended Complaint for

Copyright Infringement, Conspiracy to commit copyright infringement, and Criminal and

Racketeering (R.I.C.O) Act claims against the Defendants Robert Sylvester Kelly p/k/a R. Kelly and

Sony Music Entertainment and Sony Music Publishing, LTD, collectively referred to as Sony Music

Entertainment, as parent company for Defendants Sony Music Publishing LTD, Sony Music

Entertainment, RCA Records and Jive Records, and restates each and every allegation contained in

1

Plaintiff's original Complaint, and all Exhibits attached thereto and incorporated herein, Plaintiff's Reply, Plaintiff's Motion for Entry of Default, all of which are incorporated herein by reference as if included herein in their entirety.

## INTRODUCTION

1.      This is an action for willful copyright infringement by the owners of the rights to the song "LOVE LETTER," a song written and produced by Plaintiff as songwriter Ricardo Wilson and registered with the United States Copyright Office. Defendants Robert Sylvester "R-Kelly" Kelly, the credited and purported writer of the hit song "Love Letter" along with Sony Music Entertainment, as distributor and label, and the other defendants, copied and exploited, without authorization or credit, the "Love Letter" composition.

2.      This case is brought by Ricardo Wilson, the owner and songwriter based in Atlanta, Georgia

3.      Plaintiff brings this action for Defendants' infringement of the copyright in the composition of "Love Letter," and for all damages arising from that infringement, based on 100% of the ownership of that composition, including 100% of the publishers' share and the writers' share of those rights.

4.      "Love Letter" was written and produced by Plaintiff in 2009, registered via  poor man's copyright in 2009 and with the United States Copyright Office filed in 2010 and registered in 2011.

5.      Defendant Robert Sylvester Kelly copied various elements of "Love Letter," including but not limited to the arrangement, melody, rhythms, harmonies, drums, bass line, backing chorus, substance, tempo, syncopation and looping which the Plaintiff disclosed to the Defendant Kelly in a cadence in 2009 on a call that was joined by Tom Tom and Renaldo "Roc" Parker, Kelly's then manager and later repeatedly confirmed in conversations with Tom Tom, as

2

representative for Defendant Kelly and with and on behalf of Defendant Robert Kelly over a period of time spanning from 2009 to 2018. Plaintiff brings this action for copyright infringement under 17 U.S.C.§101, 501 *et seq.,* arising from the Defendants' unauthorized reproduction, distribution and/or public performance of the infringing composition.

## JURISDICTION

6.      The Court has subject matter jurisdiction under 28 U.S.C. § 1338(a) because this action arises under the Copyright Act of 1976, 17 U.S.C. § 101, *et. seq.* Federal Courts have exclusive jurisdiction over such claims pursuant to 28 U.S.C. § 1331.

7.      This Court has personal jurisdiction over the enumerated Defendants because they have directed their activities and marketing of the infringing works to Georgia residents, and Georgia residents are able to purchase, download, and stream the infringing compositions and recordings.

8.      Defendants have engaged in systematic and continuous business activities relating to the Infringing Works. As such, the Defendants have engaged in continuing business activities in the instant jurisdiction.

9.      The instant Defendants are, at a minimum, constructively aware of their continuous and substantial commercial interactions with Georgia residents.

10.      Defendant Robert Kelly has performed, and he and the other Defendants have authorized, organized, and promoted performances of the infringing work numerous times in Georgia.

11.      The Defendants have generated touring and recording revenues from the unauthorized and unlawful exploitation of the infringing work, including receiving substantial revenue from such exploitation in Georgia. They have advertised the Infringing Works to Georgia residents.

3

12.     The Defendants, individually and collectively, have generated substantial revenue from the exploitation of the infringing works in Georgia.

13.     Georgia has a considerable interest in adjudicating disputes wherein Georgia residents are the target of the harm resulting from exploitation of the infringing work.

14.     Although some of the defendants are primarily based outside of Georgia, they facilitated the infringing acts occurring in the U.S. and actively participated in a scheme aiding, inducing, and contributing to copyright infringement in the U.S. Specifically Robert Sylvester Kelly is a resident of Illinois but has spent substantial time, including time spent while engaged in copyright infringement, in Georgia, while working on the album which included "Love Letter."

15.     The Defendants could reasonably have anticipated being sued in a court in the U.S. in general, and Georgia in particular, given their willful and knowing exploitation of the infringing work in Georgia.

16.     Venue is proper in this Judicial District pursuant to 28 U.S.C §1 391(b), §1391(c), and §1400(a), respectively, because Defendants maintain offices in and are subject to personal jurisdiction in this Judicial District and have committed unlawful acts of infringement in this Judicial District.

**PARTIES**

17.     The Plaintiff is the legal owner of the copyrights or the beneficial owner of the copyright and is entitled to the proceeds of exploitation of the copyright of the copyrights to the song and lyrics and musical composition copyrights of the musical composition entitled "Love Letter" and is an individual residing in the State of Georgia.  Plaintiff is engaged, among other things, in conducting the business of song writing, music publishing and otherwise commercially exploiting the musical composition copyrights of the music including the work

entitled "Love Letter'.

18.    Upon reasonable information and belief, Defendant Robert Kelly is a musician, singer, songwriter, and producer living in Illinois, who does business in Georgia and throughout each state of the US, both individually, and under its distributor and label Sony Music Entertainment. Robert Kelly is an accomplished Artist and performer and Grammy Award winning Artist.  He has numerous other awards and Robert Kelly conducts systematic and continuous business in Georgia including, but not limited to, public performances, and selling albums and merchandise to the citizens of Georgia. The Defendant, Robert Kelly claimed he produced and performed the Infringing Work and later released, distributed, and publicly performed the infringing work and sound recording and/or authorized its reproduction, distribution and public performance.

19.    Upon reasonable information and belief, Defendant Sony Music Entertainment is an American company with its principal place of business at New York, New York. Upon information and belief Sony Music Entertainment approves, organizes, supports, advertises and or negotiates Defendant Robert Kelly's touring arrangements. Jive Records was at all relevant times solely owned by Sony Music Entertainment.  Upon information and belief, Sony Music Entertainment has arranged for the performance of the Infringing Works numerous times in Georgia and throughout the United States and abroad and throughout the World. Upon information and belief, Sony Music Entertainment conducts systematic and continuous business in Georgia. It has generated substantial revenue from the exploitation of the Infringing Works in Georgia, including but not limited to public performance of "Love Letter." Upon further information and belief, Sony Music Entertainment entered into contracts with other defendants which authorized and cause widespread exploitation of the Infringing Works in the United States and specifically in Georgia.

20.     Upon reasonable information and belief, at all relevant times, Jive Records, whose Parent Company is Sony Music Entertainment is Robert Kelly's record label, based in the state of Illinois.

21.     Upon reasonable information and belief, Jive Records was Robert Kelly's record label, which was at all relevant times owned by Defendant Sony Music Entertainment.

22.     Upon reasonable information and belief, Jive Records produced the recording of the offending recording of "Love Letter" and benefited from the exploitation of the recording in the United States and around the world.

23.     Upon reasonable information and belief, Sony Music Entertainment is a business entity headquartered in the United States and regularly doing business in Georgia, through its affiliate, SONY Music Publishing. It arranged for the distribution of the offending recording of "Love Letter." Sony Music Entertainment is responsible for coordinating, among other things, the marketing, licensing, promotion and sales of the Infringing Works in the United States. Upon information and belief, Sony conducts systematic and continuous business in this district and has generated substantial revenue from the exploitation of the Infringing Works.

24.     Upon reasonable information and belief, SONY Music Publishing, LLC is a Delaware limited liability corporation with its principal place of business in New York, New York. Upon reasonable information and belief, Sony is the music publisher for "Love Letter and administrates "Love Letter." It has generated substantial revenue from the exploitation of the Infringing Works.  It is in a unique position to have known about and/or participated in the exploitation of either or both works. Its conflicting position made it impossible for it to correct the problem.

25.     Upon reasonable information and belief, Sony Music Entertainment d/b/a RCA Records is a Delaware corporation with its principal place of business in New

York. RCA Records, is owned by Sony Music Entertainment Corporation, which also has its principal place of business in New York. Upon Information and Belief, Sony Music Entertainment also participated in the exploitation of the Infringing Works. Upon reasonable information and belief, Jive Records was a business entity headquartered in the United States that regularly did business in Georgia. It also participated in the infringing activity described.

26.     Upon reasonable information and belief, Sony Music Entertainment Ltd. (UK) is a business entity headquartered in the United States and regularly doing business in Georgia. It also participated in the infringing activity described.

## FACTS

27.     The musical composition, "Love Letter", (the "Work") was written by Plaintiff ("Wilson") and was copywritten by "poor man's copyright" in 2009 and later copywritten by the US Copyright office in 2011. Defendant Robert Kelly became aware of the Work through direct contact with Renaldo "Roc" Parker while serving time along with Wilson in 2009-2010. Plaintiff through cadence and articulation not only shared the words of the Works, including at least 4 bars, the melody and arrangement with Tom Tom during a phone call with he and the Defendant Kelly in 2009, which was witnessed by several individuals of which the Plaintiff plans to call to bear witness to said occurrence.

28.     At such time, Defendant Kelly expressed an interest in the Work and later went on to record and perform the Work, all the while assuring the Plaintiff that he would be compensated and credited for his Work. However, in 2010, the Work entitled "Love Letter" was registered by Kelly without crediting the Plaintiff with the copyright of the Work. Contrarily, the copyright registration lists only Robert Kelly as the author. The composition was registered for copyright in 2010 contrary to Plaintiff's sole interest in said copyright of the Work. Defendant Kelly went on to title his 2010 album "Love Letter" and released said Work also as a

7

single in 2011.

29.     The harmonic, melodic, subject matter, and rhythmic elements of composition in "Love Letter" have made this song one of the most famous songs in R&B and soul and popular music history. "Love Letter" has been anthologized by celebrated music producers and ranked as one of the top greatest breakbeats of all time.

*30.*     Defendant, Robert Kelly, professionally known as "R Kelly", is a musical artist that has experienced long-standing success as an international music star over a decade and in 2010 was coming off of a bad run as a direct result of criminal and sexual assault allegations that had been levied against him and the song "Love Letter" was acclaimed as a resounding success and was credited for the Defendant Kelly's comeback in 2011 and  commercial success and garnered both Defendant Kelly and Defendant Sony Music Entertainment.

31.     Defendants have willfully infringed on Plaintiff's copyright to the Work entitled "Love Letter." This case seeks damages for Defendants' willful copyright infringement.

32.     The two songs share a distinctive combination of musical materials, designated as the same arrangement, backing pattern; it is comprised of a coordination of harmony (chord progression), bass line, and rhythm.

33.     There are many ways that musicians think and speak about rhythm. In order to examine the role rhythm plays in the similarity between these two songs, we will turn to a consideration of "harmonic rhythm." The term harmonic rhythm refers to the timing of the chord changes in a song.

34.     The R Kelly version in "Love Letter" uses a substantially similar substance, along with chord progression, melody and arrangement, which collectively makes the two

versions unquietly similar.  In addition, the bass line used is essentially similar to the bass line in "Love Letter," even if a different key is used.

35.      The combination of the shared chord progression, the shared bass line and shared harmonic rhythm confirm the fact that "Love Letter" infringes on the Copyright of "Love Letter" by Plaintiff which was filed in 2009 and registered in 2011.

36.      Plaintiff's "Love Letter" uses the identical harmonic rhythm as found in Kelly's "Love Letter," and this is shown in Plaintiff's First Complaint which incorporated Plaintiff's 2009 copyright.  It does not require an understanding of standard rhythmic notation to see (and hear) that this rhythm is identical between the two songs as well as the subject matter.

37.      In comparing the melodic vocal pitches for the first two phrases of each of the songs each example is based on a repeated chord progression, supporting variations in the vocal parts. Although the verse of each song is built upon four hearings of the same progression, the first two phrases (essentially repeated, with ornamental variation, for phrases three and four) are sufficient for comparison purposes.

38.      The striking similarity of the harmony, bass line and rhythm backing patterns of both songs, along with the use of the backing pattern as a repeated element on which each song is constructed, demonstrate that Kelly's "Love Letter" is based on Wilson's "Love Letter."

39.      Holding aside rhythmic similarities for the moment, the two melodies exhibit many identical elements with pitch alone, all accented in relation to their ornamental differences.

40.      Having identified the similarity between the backing pattern in the two songs, we will now demonstrate how often this pattern occurs in each composition.

41.      A comparison of the vocal melody in these two songs shows that there are

melodic passages in Kelly's song that are substantially similar to passages in Plaintiff's recording.

42.     Both melodies begin on the same chord tone, ascend and then fall in exactly the same manner. Both melodies are delayed until a second chord appears. They both descend stepwise in exactly the same way. In both songs, verses are composed of couplets formed of a repeated line. In both songs, the repeated line itself contains a repeated progression. Each verse, then, in both songs, contains one progression heard four times, supporting a longer line performed twice. In both songs, the chorus is also in the identical pattern. In both songs, contrasting sections lead to stop-time solo singing over climactic chords.

43.     There are further similarities in rhythm in the two songs, including that the tempos of the two songs are virtually identical.

44.     Defendants' access to Plaintiffs' work is beyond challenge, as "Love Letter" is a world-famous composition and recording, and the two works are indeed substantially similar for purposes of copyright infringement. The additional fact that no other song shares the foregoing characteristics is strong evidence not of arbitrary convergence or parallel development, but knowing, willful infringement.

45.     Revenue derived and/or related to "Love Letter" including but not limited to record sales, performance tour income, merchandising, synchronization and licensing are in the millions of dollars.

46.     The Defendant, Mr. Robert Kelly, has had access to "Love Letter" by virtue of its wide dissemination. Furthermore, "Love Letter" is available on every major digital retailer and streaming service including, without limitation, iTunes and Amazon.

47.     The melodic, harmonic, drums, bass line, backing chorus, tempo and syncopation

10

elements of the "Love Letter" composition are substantially and/or strikingly similar to those elements of the Plaintiff's "Love Letter" composition. The instant Defendants copied, reproduced, distributed, and/or publicly performed copyrightable elements of "Love Letter" specifically, the melody, harmony, drums, bass line, backing chorus, tempo and syncopation of "Love Letter", without authorization. The two Works in question are therefore substantially similar.

48.     To date, each of the Defendants reproduced, distributed, publicly performed, and/or authorized the reproduction, distribution, and public performance of the infringing composition and sound recording "Love Letter" and each of the Defendants continues to infringe on Plaintiff's copyrighted Work entitled "Love Letter".

49.     The Defendants were notified of the infringement on or about November 2018, by electronic mail or telephone (the "Notice"). Despite receiving the Notice, the Defendants continued to exploit "Love Letter" without permission, by using the melodic, harmonic, drums, bass line, backing chorus, tempo and syncopation elements copied from "Love Letter" composition, which constitutes copyright infringement.

50.     Despite the Notice, all of the Defendants have continued to infringe Plaintiffs' copyrighted work. The infringement by the Defendants is willful, as evidenced by their continuing to infringe "Love Letter" after the Notice was provided to them.

51.     The Defendants knowingly and intentionally infringed Plaintiffs' rights. The Defendants' collective knowledge and intent are established by, among other things, the fact that Defendants to this day have neither sought, nor obtained, a license from the owners of the rights. All conditions precedent to the maintenance and/or establishment of the instant action have been satisfied and/or, otherwise, waived by the Defendants.

52.     Defendants' have a pattern and practice of taking the works of unsigned writers

and exploiting said works by registering said works as their own original works and not crediting and or compensating the rightful, original owners of said Works. Said pattern amounts to conspiracy copyright infringement as well as civil and or criminal racketeering (R.I.C.O) violations the facts of which will be supported by witness and other evidence to be proven at trial.

53.     The Defendants' reproduction, distribution, and public performances of the infringing work, "Love Letter" in the United States and internationally, continue to this day, and Defendants have not deigned to compensate Wilson, as the rightful copyright owner of the Work for the use of the copyrighted work in "Love Letter".

54.     The Defendants' reproduction, distribution, public performance, streaming, concerts, merchandizing, synchronization, licensing and economic exploitation of "Love Letter", and authorizing others to do the same, infringes Plaintiffs' exclusive rights under the Copyright Act.

55.     The conduct of the Defendants is knowing and willful.

56.     As a direct and/or proximate result of the Defendants ' wrongful conduct, the Plaintiff has been irreparably harmed, suffered damage, and Defendants have profited in an amount in the amount of millions of dollars and to be determined at trial.

57.     The Defendant, Sony Music Entertainment, as parent company for Jive Records, RCA Records and on its own behalf, have infringed on Plaintiffs' exclusive copyright in "Love Letter" when it distributed and sold sound recordings, including compact discs, phonorecords, digital downloads, licenses, streaming, ringtones, ringbacks, and all other economic exploitation and video recordings, embodying "Love Letter".

58.     Such reproduction and release was to be licensed by the Defendants from the Plaintiff by Kelly based on Kelly and Kelly's manager's repeated representations from 2010

12

through 2018.  Under said assurances, Defendant Kelly made clear to the Plaintiff that the Plaintiff was to be compensated and credited for his work, instead Kelly along with Defendant Sony Music Entertainment and its representatives sought to exclude Plaintiff from any credit and or compensation from the Work.  Hence, Defendants never obtained the proper license from the Plaintiff, therefore sought to exploit and did release the work without any license or consent of authority from the Plaintiff. By virtue of this unauthorized commercial exploitation, Defendant Kelly and Defendant Sony Music Entertainment have realized illegal revenues.

59.     The Defendants infringed Plaintiff exclusive copyright in "Love Letter" when they issued and/or authorized others to issue licenses to third parties for the use, publication, and exploitation of "Love Letter". Said licenses were issued without any consent or authority from Plaintiff, as the rightful copyright owner of "Love Letter," from which "Love Letter" was substantially copied. By virtue of this unauthorized commercial exploitation, Defendants have realized illegal revenues.

60.     As a direct and/or proximate result of the Defendants' infringement on Plaintiffs' exclusive copyright in "Love Letter", Plaintiffs have suffered damages. Said injuries are continuing and will not abate in the future.

61.     Pursuant to 17 U.S.C. § 504(c), the Plaintiff is entitled to statutory damages since the infringement occurred after the copyrights were registered.

## FIRST CAUSE OF ACTION

### (Willful Copyright Infringement – 17 U.S.C. § 101, et seq.)

62.     The Plaintiffs repeat and reallege each of the foregoing Paragraphs as though fully set forth herein, as well as all facts alleged in Plaintiff's original Complaint along with all attached Exhibits, which are incorporated therein and filed with the Court on October 31st, 2018. Plaintiff's Reply filed on May 29th, 2019 and Plaintiff's Motion for Entry of Default filed on

May 22nd, 2019.

63.     The Defendants' reproduction, distribution, and public performances of the infringing work, "Love Letter" in the United States and internationally, continue to this day, and Defendants have not deigned to compensate the copyright owners of the Work for the use of the copyrighted work in "Love Letter".

64.     The Defendants' reproduction, distribution, public performance, streaming, concerts, merchandizing, synchronization, licensing and economic exploitation of "Love Letter", and authorizing others to do the same, infringes Plaintiffs' exclusive rights under the Copyright Act.

65.     The conduct of the Defendants is knowing and willful.

66.     As a direct and/or proximate result of the Defendants ' wrongful conduct, the Plaintiffs have been irreparably harmed, suffered damage, and Defendants have profited in an amount in the amount of hundreds of millions of dollars and to be determined at trial.

67.     The Defendant, Sony Music Entertainment, infringed on Plaintiffs' exclusive copyright in "Love Letter" when it distributed and sold sound recordings, including compact discs, phonorecords, digital downloads, licenses, streaming, ringtones, ringbacks, and all other economic exploitation and video recordings, embodying "Love Letter". Such reproduction and release was wholly unauthorized, as it was without any license or consent of authority from the Plaintiff.  By virtue of this unauthorized commercial exploitation, Defendant Sony Music Entertainment have realized illegal revenues.

68.     The Defendants infringed Plaintiff Wilson's exclusive copyright in "Love Letter" when they issued and/or authorized others to issue licenses to third parties for the use, publication, and exploitation of "Love Letter". Said licenses were issued without any consent or authority from the copyright owner of "Love Letter," from which "Love Letter" was

14

substantially copied. By virtue of this unauthorized commercial exploitation, Defendants have realized illegal revenues.

69.     Sony was not a proper licensee who had been granted a license from R. Kelly, who is not listed on Plaintiff's copyright certificate as an author, and/or his publishing company to distribute [the Song] – stating in the Second Amended Complaint the following: (1) "Kelly recorded and released 'Love Letter' . . . without permission"; (2) Kelly put "the record on an album without having purchased the [S]ong through the proper channels"; and (3) Kelly's manager "consistently informed Plaintiff that he would be compensated for the [S]ong, album title, tour, digital downloads, etc. and everything else derived from the original lyrics and [S]ong."

70.     From 2009 to 2018, Renaldo Roc Parker, manager for Defendant Kelly continued to reassure Plaintiff that he would be provided credit and compensation from his work, in fact, Defendant Kelly in furtherance of this understanding between the Plaintiff and the Defendant Kelly, never registered a PA for the song "Love Letter", but only registered a SR of the song which amounted to a CD of the song.  It was Plaintiff who had registered in 2009 both the poor man's copyright and filed with the US Copyright office the PA version of the same work and it was not until 2018, when the Plaintiff was advised by Defendant Kelly's manager that it was not Defendants intention to credit Plaintiff for the work or compensate the Plaintiff for his work.

71.     As a direct and/or proximate result of the Defendants' infringement on Plaintiffs' exclusive copyright in "Love Letter", Plaintiffs have suffered damages. Said injuries are continuing and will not abate in the future.

72.     Pursuant to 17 U.S.C. § 504(c), the Plaintiffs are entitled to statutory damages since the infringement occurred after the copyrights were registered.

73.     The Defendant can show elements of the work that are original to establish —

copying of constituent elements— that (1) the defendant had access to the work and (2) that

the defendant's work is substantially similar to the Plaintiff's that an average lay observer

would recognize the alleged copy as having been appropriated from the copyrighted work.

74.     Plaintiff does not, explicitly not implicitly, acknowledge that Sony was a proper

licensee who had been granted a license from R. Kelly, who is not listed on Plaintiff's

copyright certificate as an author, and/or his publishing company to distribute [the Song] –

stating in the Second Amended Complaint the following: (1) "Kelly recorded and released

'Love Letter' . . . without permission"; (2) Kelly put "the record on an album without having

purchased the [S]ong through the proper channels"; and (3) Kelly's manager "consistently

informed Plaintiff that he would be compensated for the [S]ong, album title, tour, digital

downloads, etc. and everything else derived from the original lyrics and [S]ong."

75.     Plaintiff can show that his copyrighted lyrics are substantially similar to the

Song even though Kelly 'changed a lot of the words; and as such, Plaintiff has the requisite

information necessary to show copying of constituent elements of the work that are original

for purposes of establishing an infringement claim.

76.      ·Plaintiff's claims commenced in 2018 – i.e., Plaintiff asserts that he "was

transferred to Pollock, Louisiana's federal prison before he heard the song 'Love Letter' being

broadcasted nationally on the radio" and that upon being released from prison, Kelly's

manager contacted Wilson multiple times to reassure him that he would be compensated for

the Song but failed to so eventually. Due to Plaintiff's long period of incarceration, he lacked

the ability to learn and or pursue claims against the Defendants prior to 2018 and was

justifiable in relying on the assurances of Defendant Kelly and his manager that he would be

paid and credited for his work.  Any claims that he would perhaps have been able to pursue

and or enforce prior to his release in 2018 were judicial equitably tolled due to his inability to learn and or pursue claims against the Defendants. Plaintiff timely filed his claims against the Defendants' at the earliest time that he knew and or could have known of his claims against the Defendants facts of which shall be easily proven at trial through testimony and evidence of communications between Plaintiff and Kelly's representatives as to their intent to credit and compensate the Plaintiff for his Work. Defendant Kelly's own legal problems were even offered as an explanation of the delay in compensation, a fact that Plaintiff was well aware of any supported Defendant's representative's assertion that delayed payments to him were just a part of Defendant Kelly's ongoing legal issues and not that of an intent to willfully deny the Plaintiff his compensation and or credit for his work.

77.     As a direct and/or proximate result of the Defendants' infringement on Plaintiffs' exclusive copyright in "Love Letter", Plaintiffs have suffered damages and has timely filed these claims to recover said damages from the Defendants. Said injuries are continuing and will not abate in the future.

78.     Pursuant to 17 U.S.C. § 504(c), the Plaintiffs are entitled to statutory damages since the infringement occurred after the copyrights were registered.

## Second Cause of Action
## Conspiracy to commit Copyright Infringement

79.     In 2019 Sony Music Entertainment revealed the Sound Recording copyright naming Sony Music Entertainment as the Author, R. Kelly as the writer, and Valerie Felcetto as the certifying agent. Upon reasonable information and belief Sony Music Entertainment conspired to seek full ownership of the song and album Love Letter with Robert "R. Kelly"

Kelly by profiting millions from the song, and excluding Wilson from any earnings produced from the song participating in contributory copyright infringement, and secondary liability, while ordering Valerie Felcetto to assist Robert Kelly in excluding Wilson from the negotiation process, split sheets, songwriting credits, publishing, royalties, and SR copyright. In February 2011, Valerie Felcetto conspired with Kelly and helped certify the SR copyright.

18 U.S.C. § 2, and 17 U.S.C. § 506 (a) (1) (A)


### Third Cause of Action
### Criminal or Civil Racketeering (R.I.C.O.) Act


80. Plaintiff realleges each and every allegation contained herein and states further as follows:

81. Plaintiff shows that in 2011 he obtained a valid copyright;

82. Defendants infringed on said copyright

83. Defendants infringement was willfully; and for purposes of commercial advantage or private financial gain.

84. Defendant's conspired to infringe on Plaintiff's copyright and did so systematically and with arbitrary and reckless disregard for the rights of many writers and said pattern or practice did in fact garner the Defendants a commercial advantage and financial gain.

85. Sony Music Entertainment conspired with R Kelly, Renaldo Parker, Tom Tom, Valerie Felcetto and others to pirate the song, exclude plaintiff from any credits and profits from the song and SR copyright certification.

86. Said acts are prohibited and said conspiracies to violate the Act as prosecuted under 18 U.S.C. § 371.

**WHEREFORE,** the Plaintiff Wilson respectfully request that judgment be entered against the enumerated Defendants, as follows:

18

A.     For judgment that Defendants have violated the Copyright Act and that all such violations have been willful; and

B.     For judgment assessing Defendants for the damages in excess of Ten million dollars ($10,000,000.00) suffered by Plaintiffs, including an award of actual damages and Defendants' profits attributable to the infringement, or statutory damages (at Plaintiffs ' election) under the Copyright Act, as well as costs and attorney's fees to the full extent provided for by Sections 501, 504 and 505 of the Copyright Act, 17 U.S.C. §§ 501, 504 and 505; damages and profits shall include all profits and damages resulting from exploitation of the work domestically and internationally, as well as any and all profits and damages in the following categories attributable to the infringement, including but not limited to:

1.     Record sales;
2.     Downloads;
3.     Ringtones;
4.     Ringback tones;
5.     Public performance revenues;
6.     Digital revenue;
7.     Streaming revenue;
8.     Synchronization licensing;
9.     Merchandising;
10.    Public appearances;
11.    Endorsements;
12.    Sponsorships;
13.    Spokesperson work;
14.    Touring revenue;
15.    Advertising revenue;
16.    Appearance fees;
17.    Name and likeness income and increase in value;
18.    Rights of publicity income and increase in value;
19.    Increased value all Defendants' publishing and/or record company and/or companies;
20.    Increased value of all Defendant's, including Kelly's Wage's catalogues;
21.    Increased value of music publishing and/or record royalties and rights;
22.    Increased value of social media rights, accounts and value;
23.    Increased goodwill;
24.    Promotional value;
25.    Increased value of royalty rate for record deals;
26.    Increased value in distribution deals, negotiating power and reduction in costs;

27. Value of obtaining lower cost of administration fees and/or increased advances for publishing deals;

28. Value of obtaining better terms for record company advances and terms and multi-record deals;

29. Value of obtaining better terms of publishing and/or recorded master deals for Kelly's existing catalogue and for future works;

30. Increased value in negotiating 360 deals with record companies and/or publishers;

31. Sheet music sales and sheet folio income;

32. Any and all music publisher income;

33. Any and all record master income;

34. Any and all record income;

35. Any and all Sound Exchange, BMI, ASCAP, PRS, SESAC, PPL, SOCAN, MCPS, Harry Fox Agency, and any and all collection society, mechanical society and performance society income worldwide;

36. Any and all producer royalty income;

37. Any and all arrangement income;

38. Any and all income derived from any existing medium or any medium hereinafter developed worldwide;

39. Any and all income from any new collection society and/or collection agency to be created anywhere in the world, including by the U.S. Congress under the Music Modernization Act;

40. Any and all income from any society to which any Defendant belongs or joins in the future;

41. Any and all income and/or residuals from SAG-AFTRA;

42. Any and all income from Apple, iTunes, Amazon, Spotify, Pandora, Rhapsody, and any and all download and streaming services; and

43. Any and all of Defendants' equity interests in Spotify, and any other music streaming or download services or companies in which one or more Defendant has an interest, as it relates to the value from the inclusion of the infringing song in the service; and

C. For judgment granting such other, further, and different relief as to the Court may seem just and proper.

### REQUEST FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully requests a trial by jury as to all issues triable by jury, as enumerated and set forth in more detail in this Complaint.

Dated:  Atlanta, Georgia
       April 6, 2020

Ricardo Wilson

By:
Plaintiff, Pro Se

*478 S. Atlanta St.*
*Roswell, Ga. 30075*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
-----------------------------------------------------------

RICARDO WILSON,

      Plaintiff,

   v.

ROBERT SYLVESTER KELLY P/K/A R-KELLY,
SONY MUSIC ENTERTAINMENT, AND SONY
MUSIC PUBLISHING LTD

## CERTIFICATE OF SERVICE

    I, do hereby certify that on this day, I have served the Defendants, via its attorney of record a true and correct copy of this THIRD AMENDED COMPLAINT via United States Mail with the correct and proper postage affixed thereon.

THIS 6TH DAY OF APRIL, 2020

Robert S. Kelly #09627-035
METROPOLITAN CORRECTIONAL CENTER
71 West Van Buren St.
Chicago, IL. 60605
312-322-0567

STOKES WAGNER, ALC
One Atlantic Center, Suite 2400
1201 W. Peachtree Street
Atlanta, Ga 30309

RICARDO WILSON, PRO SE
PLAINTIFF
478 S. Atlanta St.
Roswell, Ga. 30075

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**
PAu 3-716-250

**Effective date of
registration:**

January 2, 2014

**Title** ───────────────────────────

Title of Work: Love Letter
Nature of Work: Song (music R&B) Lyrics

**Completion/Publication** ────────────

Year of Completion: 2009

**Author** ──────────────────────────

Author: Ricardo Wilson

Author Created: R&B song about writing a love letter to a loved one

Work made for hire: No

**Copyright claimant** ────────────────

Copyright Claimant: Ricardo Wilson

5855 Walnut Creek Rd Apt C117, River Ridge, LA, 70123

**Certification** ─────────────────────

Name: Ricardo Wilson

Date: January 25, 2011

Correspondence: Yes

Copyright Office notes: Regarding author information: deposit contains lyrics only.

Page 1 of 1

NAME: Ricardo Wilson
REG. NO. 67322-019   QTR. 0A122
FEDERAL CORRECTIONAL INSTITUTION
P.O. BOX 4000
MANCHESTER, KY 40962-4000

Victoria Potts
5855 Walnut Creek Road
River Ridge, LA 70123

Victoria Potts   1Pm Cut
5855 Walnut Creek Rd.
River Ridge, LA 70123

Wilson
67322-019
Federal Prison Camp
P.O. Box 2099



Nov. 14, 2011

As-Salam Alaikum

Please forgive me for being so distant. You are always in my prayer. All praise be to Allah Roc just got at me the other day and told me that he had spoken to R. Kelly about you. He said R. Kelly said he got you and that he was going to do a love letter 2. I'm gettin ready to holla at rock as soon as I finish this letter and tell him to stay on that. Well, D-shot he not even around nomore. I'm going to get at Rob ASAP.

2016 coming up for me. You know me I'm on my deen. I have D-Shot's info. if you need it just holla back. Plus i'm going to be incontact more well until next time insha Allah.

Your Brother,

RICARDO WILSON
478 S. ATLANTA ST.
ROSWELL, GA 30075



U.S. POSTAGE PAID
FCM LG ENV
LITHIA SPRINGS, GA
30122
APR 09 20
AMOUNT
**$0.70**
R2305K139841-04

1028      30303

CLEARED
APR 13 2020
U.S. Marshals
Atlanta, GA

OFFICE OF THE CLERK
UNITED STATES DISTRICT COURT
2211 UNITED STATES COURTHOUSE
75 TED TURNER DRIVE, S.W.
ATLANTA, GA 30303-3361